GILES *v.* STATE.

Criminal 3916.

Opinion delivered January 28, 1935.

*Will Steel,* for appellant.

*Walter L. Pope,* Attorney General, and *Leon B. Catlett,* Assistant, for appellee.

SMITH, J.   Appellant was tried for and has been convicted of a violation of § 2731, Crawford & Moses' Digest, alleged to have been committed "by stamping with his feet the said grave of Melvin Brackman, and by urinating upon the grave of the said Melvin Brackman, with the unlawful, wilful, felonious and malicious intent then and there to deface and injure the grave of the said Melvin Brackman."

The principal witness for the State, and the one whose testimony had the highest probative value as tending to support the conviction, was Muriel Lawrence. This witness, a boy 17 years of age, was a nephew of the deceased, and he and a young man named Paul Bangston were engaged in burning old shingles and other debris which had accumulated about a church upon which a new roof had been placed and certain other repairs made. The cemetery in which Brackman's grave is located is adjacent to the church and is a part of the church grounds.   Young Lawrence testified that while he and Bangston were thus employed defendant and one Pressley Davis drove up to the church yard in a wagon, which they left standing in front of the church.   After getting out of the wagon defendant and Davis started walking in the direction of Brackman's grave, and the route they pursued led them not only to this grave, but also to the grave where Davis had buried his child.   As defendant and Davis walked away young Lawrence heard defendant say: "He came down in the bottom with his big gun on and tried to run him and his little girl off, and he wouldn't do no s— of a b— that way."   Objection was made to the admission of this testimony, upon the ground that it was not shown to whom defendant referred, but the court, in overruling the objection, stated that this was a question of fact to be passed upon by the jury.

These questions were asked the witness and the following answers were made to the questions:   "Q. When he [defendant] walked back to the grave, what happened then?   A.  He urinated on the grave.   Q.  Well, now, did he just walk up to the grave?   A.   No, sir. Q.   Did he get up on top of it?   A.   No, sir.   He was about two and a half or three feet from it."   He was

asked: "You didn't see him stomp the grave?" and he answered, "No, sir."

Bangston gave testimony to substantially the same effect.

Other witnesses who were told of the incident later inspected the grave and found the tracks of some one who had walked over the grave for its entire length, and on its side and in the sand out of which the mound was made covering the grave there was found a washed-out place such as a stream of urine might have made.

Other witnesses, including the sheriff of the county, gave testimony from which the inference might have been drawn that the person to whom defendant referred in the remark which Lawrence overheard was the deceased Brackman.

Davis testified that he went to the cemetery to clean off the grave of his child, and to mark off the ground which he wished to reserve for the graves of other members of his family, and defendant accompanied him and in assisting him, pulled up two or three little bushes and stepped off the ground as Davis requested him to do, and that "Then Berry [defendant] and myself walked down to where he had measured this off here, and across to Mrs. Mitchell's grave, back to his folks' grave and back out the grave yard at the gate, where the gate was," and that the defendant was never nearer Brackman's grave than "some six or seven steps."

This witness and the defendant both denied that defendant made the statement above quoted in the testimony of Lawrence, and both denied that defendant had urinated on the grave.

By way of rebuttal, testimony was offered tending to contradict the testimony of Davis, by showing that Davis had said that defendant had urinated on Brackman's grave.

This testimony must be held sufficient to support the inference that defendant referred to Brackman in the remark quoted in his testimony of Lawrence, and that defendant walked the length of Brackman's grave and urinated on it, but not that he had stamped the grave or otherwise defaced it. Lawrence, who was observing

the defendant closely, did not so testify. This testimony is not legally sufficient to constitute a violation of the statute under which defendant was prosecuted and convicted. This statute reads as follows: "Any person who shall wilfully and maliciously destroy, injure or deface any grave or any monument erected or placed to mark the place of interment of any deceased person, or shall wilfully and maliciously remove or destroy any inclosure erected for the protection of any such grave or monument, on conviction thereof shall be punished by imprisonment in the penitentiary for a term not less than two nor more than five years."

It will be observed that the minimum punishment for a violation of this statute is imprisonment for not less than two years in the penitentiary, and this was the punishment imposed by the judgment of the court from which this appeal comes. In view of the severity of the punishment, it is not to be assumed that the statute contemplated a mere trespass, such as walking upon a grave, or such indignity even as urinating upon it, for, however reprehensible that act may be, it would not injure or deface the grave. The statute contemplates such conduct as occurred in the case of *Mitchell* v. *State,* 187 Ark. 1163, 58 S. W. (2d) 205, where miscreants entered a cemetery and in a drunken abandon threw down tombstones placed to mark the last resting place of the dead, or where the accused had otherwise injured the grave or obliterated the evidence of its location. One's disgust is aroused by the depraved act of urinating on the grave of a deceased enemy; but such conduct, however disgusting, does not injure or deface the grave, and does not, therefore, constitute a violation of the statute under which appellant was prosecuted and convicted.

It was said in the case of *State* v. *Graham,* 38 Ark. 519, that criminal statutes are to be strictly construed, and no case is to be brought by construction within a statute unless it is completely within its words. This rule for the construction of criminal statutes is of universal application, and has often been applied by this court. A late case in which the rule was restated and applied is that of *Holford* v. *State,* 173 Ark. 1000, 294

S. W. 33, where it was said that "There is no better settled rule in criminal jurisprudence than that criminal statutes must be strictly construed and pursued. The courts cannot, and should not, by construction or intendment, create offenses under statutes which are not in express terms created by the Legislature."

The judgment must therefore be reversed, and the cause will be dismissed. It is so ordered.