WILLIAM C. HORNE *v.* STATE OF ARKANSAS

5813                                              490 S.W. 2d 806

Opinion delivered February 26, 1973

*John W. Cole,* for appellant.

*Jim Guy Tucker,* Atty. Gen., by: *Frank B. Newell,* Asst. Atty. Gen., for appellee.

CONLEY BYRD, Justice. Appellant William C. Horne, age 19, was charged with burglary and grand larceny allegedly arising out of a breaking and entering of the H & H Pharmacy in Sheridan. The jury found him guilty of grand larceny and not guilty of the burglary charge. For reversal, appellant relies upon the points hereinafter discussed.

The record shows that the H & H Pharmacy was closed on Saturday sometime after 6:00 or 6:30 p.m.

and that on Monday morning when Mr. Walter Ellis opened his pharmacy he noticed that there had been a breaking and entering of the building. There was a quantity of watches and drugs missing. There is proof in the record that around 11:30 p.m. on Saturday appellant was in the company of Ray Mooney, and Jacquelyn and Elaine Brewer. Both Jacquelyn and Elaine testified that appellant said he "needed a fix". Thereafter, between 12:30 and 1:00 a.m. on Sunday the appellant and Ray Mooney appeared at Lybrand's service station. Mooney had several watches and appellant had a sack full of pills, all in boxes. The next morning Mr. Lybrand found a disposable syring in the area where appellant's car had been parked. The syringe was described as being similar to those sold by H & H Pharmacy. Frank Mitchell, a State Policeman with the Criminal Investigation Division, testified that the drug Desoxyn, missing from the pharmacy, could be taken orally or injected with a syringe into a vein. When injected, the drug must be broken down with a liquid solution, where it will go in the vein—a tablet or capsule can be dissolved in a spoon. In the drug culture this is known as "popping the needle." Mooney pleaded guilty and testified for the State. According to him both he and appellant were involved in the breaking and entering, but he insisted that he took the watches and appellant took the pills.

The court did not err in denying appellant's motion for acquittal on the larceny charge. James Ivey testified that while Mooney and appellant were at the service station, there was some conversation between them about a drug store and that Mooney wanted to go back and get a gun. We pointed out in *Puckett* v. *State,* 194 Ark. 449 108 S.W. 2d 468 (1937), that an acquittal on a burglary charge does not necessarily work an acquittal of the larceny charge. Furthermore, the corroborating evidence on the larceny charge here was much stronger than on the burglary change.

There is no merit to appellant's contention that the court should have quashed certain cross-examination questions and answers about appellant's refusal to make statements or admissions to the sheriff. Having taken the stand to testify in his own behalf, he thereby waived

his Fifth Amendment right not to be a witness against himself and became subject to cross-examination like any other witness. See *Brown* v. *United States,* 356 U.S. 148, 78 S. Ct. 622, 2 L. ed. 2d 589 (1957), *Harris* v. *State of New York,* 401 U.S. 222, 91 S. Ct. 643, 28 L. ed. 2d 1 (1971), and *Rooks* v. *State,* 250 Ark. 561, 466 S.W. 2d 478 (1971).

As we view the record, the syringe was properly introduced into evidence. The proof showed that the pharmacy had been entered, a quantity of drugs susceptible to use in a syringe had been taken, and that a disposable syringe similar to that sold by the pharmacy was found near the place appellant parked his car when he was seen taking the bottles of pills out of the boxes in which they came packed. While it is true that Ellis could not assert that any syringes were taken in the burglary, he did identify the type handled by his pharmacy and their availability had the burglars wanted to take one. The other witnesses connected up the relevancy by identifying the syringe found as being similar to the one coming from the pharmacy and being found at or near where appellant had parked his car.

Neither do we find any merit in appellant's contention that the court erred in invoking the rule at the instance of the prosecution. We do not interpret Ark. Stat. Ann. § 43-2021 (Repl. 1964) as limiting the right to segregate witnesses to the accused.

Before the jury was empaneled, appellant moved to quash the jury panel or wheel. It was then admitted that only 74 veniremen were drawn from the 1970 jury wheel and that in appointing the 1971 jury commissioners, the trial court instructed them to replace only the 74 veniremen used. This of course does not comply with Act 568 of 1969. That Act requires the trial judge on or before November 1st of each year to appoint not less than three nor more than twelve jury commissioners and specifically commands the jury commissioners to select as prospective jurors, "for the following calendar year," not less than 500 persons (for Grant County) from among the registered voters. Section 22 [Ark. Stat. Ann. § 39-214 (Supp. 1971)], recognizes that there can be a challenge to

the panel and provides an alternate method of selecting jurors when the panel is quashed.

The State suggests that the language of Act 568 is directory only (not mandatory) and that in any event this slight deviation does not constitute prejudicial error.

While we must admit that the trial court's deviation in the selection of the jury is a rather practical approach to an arduous task in a county with a small population, in view of the many successful attacks that were being made on our jury selections in post conviction proceedings prior to the passage of Act 568, we cannot construe the language thereof as directory only. If such practice should be continued for many years, it would tend to exclude from jury service those voters who registered after the last full selection of the jury wheel. Furthermore, Ark. Stat. Ann. § 43-1910 (Repl. 1964), recognizes that an accused has a right to make a challenge to the panel.

Neither can we agree with the State that the deviation here is not prejudicial. In the trial of the case, appellant exhausted all of his peremptory challenges. Furthermore, in view of the changes made in the law by Act 568, we do not see how we can take any other view. Prior to Act 568, *supra*, Ark. Stat. Ann. § 43-1911 (Repl. 1964), provided that a challenge to the panel could be made only for a substantial irregularity "in selecting or summoning the jury, or in drawing the panel by the clerk." Ark. Stat. Ann. § 43-1911, was repealed by Act 568, and substituted in its place was Section 23 thereof, [Ark. Stat. Ann. § 39-215 (Supp. 1971)] which no longer makes a challenge to the selection of the jury subject to the substantial irregularity restriction.

Because of the irregularity in selecting the jury wheel or panel the judgment is reversed and remanded.